UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| KAREN D. KING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-CV-196-TAV-HBG |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Judge of Plaintiff's Motion for Judgment on the Pleadings [Doc. 19], as well as the Commissioner's Motion for Summary Judgment [Doc. 21].

Plaintiff Karen King seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Kilolo Kijakazi ("the Commissioner").[1] For the reasons that follow, the Court will **RECOMMEND** that Plaintiff's Motion for Judgment on the Pleadings [Doc. 19] be **GRANTED IN PART** and the Commissioner's Motion for Summary Judgment [Doc. 21] be **DENIED**.

I.  PROCEDURAL HISTORY

On February 8, 2018, Plaintiff protectively filed a Title XVI application for supplemental security income. On March 8, 2018, Plaintiff filed a Title II application for disabled widow's

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit. *See* 42 U.S.C. § 405(g).

benefits. [Tr. 12, 90–91, 218, 223].[2] In both applications, Plaintiff alleged disability beginning October 27, 2017. [*Id.*]. After her applications were denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 159–73]. A hearing was held on April 17, 2019. [Tr. 28–56]. On May 21, 2019, the ALJ found that Plaintiff was not disabled. [Tr. 12–23]. The Appeals Council denied Plaintiff's request for review on May 6, 2020 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on July 10, 2020, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

> 1. It was previously found that the claimant is the unmarried widow of the deceased insured worker and has attained the age of 50. The claimant met the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act.
>
> 2. The prescribed period ends on April 30, 2023.
>
> 3. The claimant has not engaged in substantial gainful activity since October 27, 2017, the alleged onset date (20 CFR 404.1571 *et seq*. and 416.971 *et seq*.).
>
> 4. The claimant has the following severe impairments: post-traumatic right ankle arthritis status post distal fibula non-displaced spiral fracture; morbid obesity and left calcaneal spur (20 CFR

---

[2] As the Commissioner and the ALJ reviewed, to be entitled to disabled widow's benefits under Title II, an individual must be the widow of the deceased worker, must have attained the age of 50, must be unmarried (subject to certain exceptions), and must have a disability that began before the end of the prescribed period—April 30, 2023. [Tr. 12]. The parties agree that with regard to Plaintiff's claim for disabled widow's benefits under Title II, the only remaining issue is whether Plaintiff has established disability.

2

404.1520(c) and 416.920(c)).

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

6. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can stand and walk for four hours over an eight-hour workday. She can sit for six hours over an eight-hour workday. The claimant can occasionally push, pull and operate foot controls with the bilateral lower extremities; and she can occasionally climb ramps and stairs, balance, stoop, kneel, and crawl. She can never climb ropes, ladders or scaffolds or crouch. The claimant can have occasional exposure to vibration and hazards, including unprotected heights.

7. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

8. The claimant was born on March 6, 1968 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

9. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

10. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

12. The claimant has not been under a disability, as defined in the Social Security Act, from October 27, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 14–22].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

5

> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to appropriately weigh the opinion evidence and explain the assessed limitations. Additionally, Plaintiff claims that the ALJ's analysis of her subjective complaints was not supported by substantial evidence due to insufficient articulation. The Court will assess the respective allegations of error in turn.

6

A.     **Medical Opinions**

Plaintiff challenges the ALJ's RFC determination, claiming that the ALJ failed to properly consider the medical opinions of record. Here, Plaintiff claims that "[t]he ALJ took two non-examining light opinions . . . a recent examining sedentary opinion . . . and a stale examining less-than-light opinion" and "settl[ed] on a limitation to four hours of standing/walking with no regard for when changes in position would occur." [Doc. 20 at 8]. Plaintiff asserts that the ALJ failed to adequately explain why the four-hour limitation was appropriate, as "[t]he ALJ used the stale opinion as an excuse to split the difference between the non-examining and timely examining opinions, which is not a provision of substantial evidence." [*Id.* at 10].

The Commissioner responds [Doc. 22] that substantial evidence supports the ALJ's evaluation of the opinion evidence, as the ALJ appropriately considered whether the medical opinions were persuasive under the updated regulations, focusing on the supportability and consistency of the opinions.

On September 7, 2016, Stephen Goewey, M.D., conducted a consultative examination of Plaintiff. [Tr. 301]. Plaintiff reported a history of knee pain since being hit by a truck in 1997 or 1998, as well as a history of ankle pain, with supplied imaging from November 2014 of the left ankle noting calcaneal spurring without acute injury or fracture. [*Id.*]. Dr. Goewey assessed bilateral knee and ankle pain history with posttraumatic arthritis without advanced features noted on examination. [Tr. 304]. Plaintiff's lower extremity evaluation was noted for a full range of motion on her hips, while her knee evaluation was noted for right knee flexion to 130 degrees with generalized knee tenderness without bony deformities appreciated. [*Id.*]. Plaintiff exhibited full range of motion on her back with negative straight leg raising test. [*Id.*]. On examination, Plaintiff revealed right antalgic gait features. [*Id.*]. Therefore, Dr. Goewey opined that Plaintiff would be

7

able to sit between five and six hours daily, stand and walk between four and six hours daily, carry at least twenty and thirty pounds frequently using standard lifting techniques, and that no assistive device would be required. [*Id.*]. Dr. Goewey subsequently ordered a knee x-ray, which revealed no acute fracture but the unusual appearance of the patella with a suggestion of a notch or defect on the upper outer aspect, which could represent possible old trauma. [Tr. 306].

Dr. Goewey conducted a second consultative examination on May 16, 2018. [Tr. 319]. On examination, Plaintiff had full cervical spine flexion, extension of 50 degrees, lateral flexion of 30 degrees, rotation to 30 degrees of her cervical spine; as well as dorsolumbar spine flexion to 80 degrees, extension to 20 degrees, side bending 20 degrees and on the right to 10 degrees and the left was negative in the straight raising test. [Tr. 320]. Plaintiff's right hip abduction bilateral was noted at 10 degrees, right hip flexion was 70 degrees, left hip flexion of 80 degrees with full extension as well as internal and external rotation, right knee flexion of 60 degrees with full extension, and left knee flexion of 80 degrees with full extension. [Tr. 320–21]. Plaintiff exhibited a full range of motion in her feet and ankle evaluation except for right side inversion and eversion noted to be 120 degrees. [Tr. 321]. Additionally, the examination revealed a right antalgic gait, limited completion of heel, toe, and tandem walking activity, and squatting at 20 percent. [*Id.*]. Dr. Goewey assessed posttraumatic right ankle arthritis, post traumatic knee arthritis–atypical, and right shoulder impingement. [*Id.*]. Therefore, Dr. Goewey opined that Plaintiff would be able to sit between three and four hours daily, stand and walk for at least two hours daily, as well as lift and carry at least twenty to thirty pounds using standard lifting precautions with limited overhead activity on the right. [*Id.*].

In the disability decision, the ALJ first reviewed Dr. Goewey's September 7, 2016 opinion, stated that the opinion was "largely supported by, and consistent with, the medical evidence of

8

record," and therefore found the opinion to be persuasive. [Tr. 19]. However, after reviewing Dr. Goewey's May 16, 2018 opinion, the ALJ found that it was not consistent with the medical record and accordingly not persuasive. [*Id.*].

Nonexamining state agency consultant Reeta Misra, M.D., examined the evidence of record at the initial level of the agency's review on May 31, 2018. [Tr. 66]. Dr. Misra opined that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk for a total of about six hours in an eight-hour workday, and sit for a total of about six hours in an eight-hour workday. [*Id.*]. Further, Dr. Misra assessed that Plaintiff had a limited ability to push and/or pull in both lower extremities. [*Id.*]. Dr. Misra opined that Plaintiff could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl—but that she could never climb ladders, ropes, or scaffolds. [Tr. 67]. Joseph Curtsinger, M.D., reviewed the evidence of record at the reconsideration level of the agency's review on September 24, 2018 and affirmed the same limitations assessed by Dr. Misra. [Tr. 101–02].

In the disability decision, the ALJ found that Dr. Misra and Dr. Curtsinger's opinions were partially consistent with and supported by the medical evidence of record, but that they were not sufficiently limiting. [Tr. 18]. The ALJ noted that Plaintiff broke her ankle in 2015 and imaging revealed a non-displaced spiral fracture in the distal fibula with no bridging callus noted and persistent anterolateral swelling at the ankle. [Tr. 19]. Further, the ALJ detailed that Plaintiff was noted to have a limited range of motion due to her pain and that she was assessed with an ankle fracture. [*Id.*]. The ALJ reviewed that Plaintiff reported heel pain in September 2016, was assessed with a left calcaneal spur, and had limitations on her standing and ability to work. [*Id.*]. Accordingly, the ALJ found that additional limitations were required, and that Dr. Misra's and Dr. Curtsinger's opinions were partially persuasive. [*Id.*].

9

Plaintiff states that Dr. Misra and Dr. Curtsinger assessed that she could stand and/or walk for six hours in an eight-hour workday, Dr. Goewey opined in his September 7, 2016 opinion that she could stand and/or walk between four to six hours in an eight-hour workday, and Dr. Goewey opined in his May 16, 2018 opinion that she could stand and/or walk at least two hours in an eight-hour workday. Plaintiff claims that the ALJ failed to appropriately explain why the "limitation to four hours of standing/walking with no regard for when changes in position would occur" was adopted. [Doc. 20 at 8].

Since Plaintiff's claim was filed after March 27, 2017, the Social Security Administration's new regulations for evaluation of medical opinion evidence apply to this claim. *See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. Under the new revised regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings, including those from your medical sources." 20 C.F.R. § 404.1520c(a). The Commissioner will "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the following factors: 1) supportability; 2) consistency; 3) the source's relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; 4) the source's specialized area of practice; and 5) other factors that would tend to support or contradict a medical opinion, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520(a), (c)(1)-(5). However, supportability and consistency are the most important factors. 20 C.F.R. §§ 404.1520(c)(b)(2).

Lastly, the revised regulations have set forth new articulation requirements for the ALJs in their consideration of medical opinions, stating:

> **(1) Source-level articulation.** Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually;
>
> **(2) Most important factors.** The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record;
>
> **(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue.** When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

20 C.F.R. § 404.1520c(b)(1)-(3) (emphasis added); *see, e.g.*, *Kilgore v. Saul*, No. 1:19-CV-168-DCP, 2021 WL 932019, at *11 (E.D. Tenn. Mar. 11, 2021). Additionally, the Revised Regulations explain, "[a] prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review . . . in [a claimant's] current claim

11

based on their review of the evidence in [the claimant's] case record[.]" 20 C.F.R. § 404.1513(a)(5).

"Although the RFC must be supported by evidence of record, it need not correspond to, or even be based on any specific medical opinion." *Simon v. Comm'r of Soc. Sec.*, No. 2:16-CV-259, 2017 WL 1017733, at *6 (S.D. Ohio Mar. 16, 2017) (citing *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015)), *report and recommendation adopted by*, 2017 WL 3172717 (S.D. Ohio July 25, 2017). An ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering the RFC. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). With respect to the ALJ's failure to base the RFC on a medical opinion, the Sixth Circuit has recently found that "[n]o bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding, but the administrative law judge must make a connection between the evidence relied on and the conclusion reached." *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019).

However, "[a]lthough the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of his reasoning." *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021). Therefore, while the ALJ was not required to base her RFC determination—including the four-hour standing and walking limitation—on any particular opinion, the ALJ failed to properly explain how she considered the supportability and consistency factors for Dr. Goewey's opinions as required by the revised regulations in reaching this determination. *See id.* ("Here, the ALJ failed to build an accurate and logical bridge from the evidence to his conclusions in his RFC analysis and in his evaluation of the opinions of Drs. Hochman and Vargo."); *see also Palmore v. Comm'r of Soc. Sec.*, No. 1:20-CV-36, 2021 WL

12

1169099, at *7 (S.D. Ohio Mar. 29, 2021) ("In the absence of any explanation of the supportability and consistency factors, as the regulations require, the Court is unable to conclude that the ALJ's consideration of Dr. Ghoorkhanian's opinion is supported by substantial evidence."); *Tanya L. v. Comm'r of Soc. Sec.*, No. 3:20-cv-78, 2021 WL 981492, at *4-5 (D. Or. Mar. 16, 2021) ("[T]he ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.'") (citing 20 C.F.R. §§ 404.1520c(a) and (b)(1)).

In the disability decision, the ALJ found that Dr. Misra's and Dr. Curtsinger's opinions—including that Plaintiff could stand and/or walk for a total of about six hours in an eight-hour workday—were partially persuasive, but proceeded to detail how the medical record supported increased limitations. [Tr. 18]. For example, the ALJ stated that Plaintiff broke her ankle in 2015 and reviewed the subsequent imaging and limited range of motion. However, with respect to Dr. Goewey's opinions, the ALJ merely reviewed the respective opinions, and then found that Dr. Goewey's September 7, 2016 opinion was supported by and consistent with the medical record, and thus persuasive, while his May 16, 2018 opinion was not consistent with the entirety of the medical record, and thus not persuasive. [Tr. 19].

The ALJ failed to provide any analysis of how Dr. Goewey's earlier opinion was consistent with or supported by the medical record, or distinguish why Dr. Goewey's subsequent opinion was not consistent with the medical record, leaving the Court unable to review her consideration of the applicable medical opinions. Further, this failure is particularly relevant when Dr. Goewey's initial opinion was provided on September 7, 2016—prior to when Plaintiff alleged that she was disabled on October 27, 2017. Plaintiff additionally claims that the ALJ failed to properly consider her testimony on how long she could walk at one time or the need for a stand/sit option. Although the revised regulations are less stringent, the Court does not find, in the present case, that simply

13

detailing the findings of two opinions, and stating that one is more supported by and consistent with the medical record, without providing any analysis or supporting rationale, allows the Court to find that the ALJ's consideration of the medical opinions is supported by substantial evidence. *See, e.g.*, *Todd v. Comm'r of Soc. Sec.*, No. 3:20-CV-1374, 2021 WL 2535580, at *8 (N.D. Ohio June 3, 2021) ("The ALJ's terse reasoning failed to build an accurate and logical bridge between the evidence and his conclusion that Dr. Sprout's opinion was substantially inconsistent with the medical record."), *report and recommendation adopted by*, 2021 WL 2530846 (N.D. Ohio June 21, 2021). The ALJ failed to specifically cite to any examination findings or other evidence in the medical record that rendered Dr. Goewey's earlier opinion more consistent with the medical record than his subsequent examination. As noted by the Northern District of Ohio, this "error is not harmless because, without fuller explanation, this [C]ourt cannot engage in meaningful review of the ALJ's decision," even if "the ALJ's ultimate conclusion may be supported by substantial evidence." *Id.* (citing *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009)).

The Court again notes that although an ALJ is required to consider every medical opinion in the record, 20 C.F.R. § 404.1527(c), they are not bound to adopt any particular opinion when formulating a claimant's RFC. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727–28 (6th Cir. 2013). The ALJ is responsible for weighing medical opinions, as well as resolving conflicts in the medical evidence of record. *Richardson v. Perales*, 402 U.S. 389, 399 (1971); *see also* 20 C.F.R. § 416.946(c) (stating the final responsibility for assessing a claimant's RFC rests with the ALJ). However, the Court cannot find that the ALJ appropriately weighed the medical opinions in this case, even under the newly applicable revised regulations, as the ALJ failed to explain how she considered the supportability and consistency factors.

14

B.  **Subjective Symptom Evaluation**

Plaintiff asserts that the ALJ's subjective complaint analysis was not supported by substantial evidence due to alleged insufficient articulation. [Doc. 20 at 12]. Plaintiff claims that the ALJ did not meaningfully address her testimony that she struggles with standing more than thirty to forty minutes and subsequently experiences significant knee pain. Here, Plaintiff acknowledges that the ALJ mentioned this testimony in passing but claims that the ALJ's "subsequent boiler plate conclusion" was insufficient. [*Id.* at 13]. Additionally, Plaintiff asserts that the ALJ failed to address her inability to afford mental health treatment.

The Commissioner responds that the ALJ found that the medical record was not consistent with limitations beyond those identified in the RFC and notes that Plaintiff did not consistently report problems with her knees or ankles. [Doc. 22 at 10]. Further, the Commissioner states that the ALJ appropriately considered Plaintiff's conservative pain treatment and reported daily activities. The Commissioner claims in arguing that the ALJ merely provided boilerplate analysis, the ALJ focused on "the synopsis provided by the ALJ after reviewing all the evidence." [*Id.* at 13].

The ALJ's decision postdates Social Security Ruling 16-3p, which eliminates the use of the term "credibility" from the applicable policy regulation and clarifies that a "subjective symptom evaluation is not an examination of an individual's character." 2016 WL 1119029, at *1 (Mar. 16, 2016); *see also Rhinebolt v. Comm'r of Soc. Sec.*, No. 2:17-CV-369, 2017 WL 5712564, at *8 (S.D. Ohio Nov. 28, 2017) (noting that under SSR 16-3p, "an ALJ must focus on the consistency of an individual's statements about the intensity, persistence and limiting effects of symptoms, rather than credibility"), *report and recommendation adopted by*, 2018 WL 494523 (S.D. Ohio Jan. 22, 2018). However, "[t]he two-step process and the factors ALJs consider when

15

assessing the limiting effects of an individual's symptoms have not changed with the advent of SSR 16-3p." *Holder v. Comm'r of Soc. Sec.*, No. 1:17-CV-00186-SKL, 2018 WL 4101507, at *10 n.5 (E.D. Tenn. Aug. 28, 2018).

The ALJ is still tasked with first determining whether there is an "underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2016 WL 1119029, at *2–3. Then, the ALJ is responsible for determining the intensity, persistence, and limiting effects of an individual's symptoms, including assessing their: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. *Id.* at *4–8.

"Despite the linguistic clarification, courts continue to rely on pre-SSR 16-3p authority providing that the ALJ's credibility determinations are given great weight." *Getz v. Comm'r of Soc. Sec.*, No. CV 18-11625, 2019 WL 2710053, at *3–4 (E.D. Mich. June 10, 2019), *report and recommendation adopted by*, 2019 WL 2647260 (E.D. Mich. June 27, 2019) (citing *Kilburn v. Comm'r of Soc. Sec.*, No. 1:17-CV-603, 2018 WL 4693951, at *7 (S.D. Ohio Sept. 29, 2018); *Duty v. Comm'r of Soc. Sec.*, No. 2:17-CV-445, 2018 WL 4442595, at *6 (S.D. Ohio Sept. 18, 2018)).

In the disability decision, the ALJ found that "the claimant's medically determinable impairments could be reasonably expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not

16

entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [Tr. 20]. Immediately prior to this conclusion, the ALJ reviewed, in pertinent part, that Plaintiff is able to drive herself to the grocery store; that she broke both of her ankles, in separate incidents, and they have worsened as she has gotten older; Plaintiff's testimony that she is able to stand, at one time, for thirty to forty minutes, as well as that she has to sit for fifteen to twenty minutes to rest after walking approximately three hundred feet; and that she has hobbies of fishing and playing darts, although she sits when she is fishing. [*Id.*]. Next, the ALJ detailed that Plaintiff testified that she uses over-the-counter medication to relieve pain; her testimony that during the day, she is on her feet from four to five hours per day total; as well as her testimony that she works until she gets tired and then sits down. [*Id.*]. Lastly, the ALJ noted that Plaintiff testified that she has had major depressive disorder since her husband passed away, that she went for mental health treatment for almost a year after this event, but that she has not received any mental health treatment in almost two years. [*Id.*].

If the District Judge finds that Plaintiff's case should be remanded for the ALJ to properly analyze the medical opinions, "[a]s resolution of this issue on remand may impact the remainder of the sequential evaluation process," it is not necessary to address Plaintiff's remaining assignment of error. *See Palmore v. Comm'r of Soc. Sec.*, No. 1:20-CV-36, 2021 WL 1169099, at *9 (S.D. Ohio Mar. 29, 2021). However, for similar reasoning, the undersigned also finds that the ALJ's subjective symptom evaluation fails to provide an accurate and logical bridge sufficient to allow for meaningful review by the Court. The ALJ reviewed Plaintiff's testimony regarding her subjective symptoms of pain, such as that she is on her feet four to five hours per day total. However, while the ALJ thoroughly discussed Plaintiff's testimony, she failed to provide an accurate and logical bridge between the evidence and her findings that Plaintiff's statements

17

concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical record. *See, e.g.*, *Rogers v. Soc. Sec. Admin.*, No. 4:20-CV-8, 2021 WL 425987, at *7 (E.D. Tenn. Feb. 8, 2021) ("The ALJ does not describe specific reasons for rejecting her testimony about her lifting and fingering abilities nor how any of the treatment notes specifically undermine the testimony.").

"This conclusion does not reverse the burden of proof, but simply holds the ALJ to [her] burden to explain [her] reasons for [her] credibility determination and [the] ultimate RFC finding." *Id.*; *see, e.g.*, *Samona v. Comm'r of Soc. Sec.*, No. 2:15-CV-11713, 2016 WL 3951420, at *8 (E.D. Mich. June 24, 2016) ("In sum, the ALJ's reasons for discounting Plaintiff's credibility, as a whole, are not articulated in a manner that allows this Court to trace the path of his reasoning. While he did not err merely by using boilerplate language . . . this 'court may not uphold an ALJ's decision, even if there is enough evidence in the record to support it, if the decision fails to provide an accurate and logical bridge between the evidence and the result.'") (internal citation omitted), *report and recommendation adopted sub nom.*, *Samona v. Colvin*, 2016 WL 3924108 (E.D. Mich. July 20, 2016).

The Commissioner argues that Plaintiff ignores that "the ALJ references several facts connected to the pertinent regulatory factors in evaluating Plaintiff's subjective complaints." [Doc. 22 at 13]. In *Forrest v. Comm'r of Soc. Sec.*, the Sixth Circuit found "no merit in Forrest's suggestion that the ALJ made only a 'boilerplate' credibility finding in violation" of Social Security Ruling 96-7p, distinguishing that the plaintiff "ignor[ed] the ALJ's thorough explanation elsewhere of his reasons for doubting Forrest's account." 591 F. App'x 359, 366 (6th Cir. 2014). However, while the ALJ may have mentioned these allegedly pertinent facts, the ALJ failed to conduct any analysis or make any conclusions regarding Plaintiff's subjective allegations of pain.

18

Therefore, the ALJ crucially failed to conduct the explanation distinguished by the Sixth Circuit in *Forrest*. *See, e.g.*, *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 260 (6th Cir. 2015) ("The boilerplate explains the extent to which the ALJ discredited Appellant's testimony, but not her reasons for doing so."). "In sum, neither the ALJ's boilerplate credibility finding nor her discussion of the evidence makes clear her reasons for discrediting [Plaintiff's] testimony" concerning her ability to stand throughout the day and knee and ankle pain. *Id.* at 261.

## VI. CONCLUSION

Based on the foregoing, the Court **RECOMMENDS**[3] that Plaintiff's Motion for Judgment on the Pleadings [**Doc. 19**] be **GRANTED IN PART** and the Commissioner's Motion for Summary Judgment [**Doc. 21**] be **DENIED**, and that this case be remanded for the ALJ to appropriately consider the medical opinions of record in accordance with this Court's direction.

Respectfully Submitted,

*Bruce Guyton*
United States Magistrate Judge

---

[3] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir.1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).